Juanita R. Brooks, SBN 75934, brooks@fr.com
Jason W. Wolff, SBN 215819, wolff@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Michael A. Amon, SBN 226221, amon@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *admitted pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *admitted pro hac vice*, degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. S.W., Suite 1000
Washington, D.C. 20024
Phone:  202-783-5070 / Fax:  202-783-2331

*Attorneys for Defendant Apple Inc.*

*[Additional counsel identified on signature page.]*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INCORPORATED,<br><br>Defendant.<br>_____<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-CV-02403-CAB-MDD<br><br>**APPLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101 (FAILURE TO CLAIM PATENTABLE SUBJECT MATTER)**<br><br>Judge:      Hon. Cathy Ann Bencivengo<br>Courtroom: 4C<br>Date:        July 19, 2018<br>Time:        2:00 p.m. |

1    The asserted claims of the '239 and '362 patents are directed to the abstract

2  idea of receiving and responding to user input, and are thus are not patent eligible.

3  Qualcomm attempts to avoid this conclusion by characterizing legal arguments as

4  factual disputes and by pointing to its recently filed motion to amend its Complaint.

5  Qualcomm's opposition largely ignores Apple's opening brief and attempts to re-

6  spin the asserted patents as something "complex" and "specific" (using these

7  adjectives over 30 times) while asserting that some unspecified fact or claim

8  construction dispute precludes judgment on the pleadings.  However, there are no

9  relevant claim construction disputes for either patent, and the alleged factual issues

10  raised by Qualcomm are either nonexistent or irrelevant.  Apple respectfully requests

11  that the Court grant its motion and declare the asserted claims ineligible under 35

12  U.S.C. § 101.

13  **I.     APPLE'S MOTION IS RIPE**

14    There are no claim construction disputes that prohibit resolving Apple's

15  motion at this time.  No terms were offered for construction for the '239 patent and

16  only a single term, "processor" is disputed for the '362 patent.  That dispute does not

17  turn on the meaning of the term processor, but whether it is a nonce term in the

18  claims and subject to 35 U.S.C. § 112, paragraph 6.  Qualcomm opposes, asserting

19  that no construction is necessary.  As for the factual issues concerning what was

20  known at the time, Apple relied on the admissions in the patents and in Qualcomm's

21  Complaint.  Notably, Qualcomm does not challenge those facts in its opposition, but

22  instead tries to dress up attorney argument and legal conclusions as disputes that

23  prohibit early resolution.

24  **II.    '239 PATENT IS INVALID UNDER 35 U.S.C. § 101**

25    **A.     The Claims of the '239 Patent Are Directed to an Abstract Idea**

26    The '239 patent claims are abstract because they are directed to the idea of

27  receiving and responding to user input from a user on a computer.  Qualcomm argues

28

that the '239 patent is not directed to an abstract idea, but instead focuses on "a specific implementation of a solution to a problem in the software arts at the time of the invention," adding that "[n]ew arrangements of known components directed at solving a specific issue are patentable." (D.I. 120 at 21-22). Qualcomm does not say what this specific implementation is, and fails to explain how it is claimed. What is described in the '239 patent is a table (not a phone), with a projector above it, where multiple users gather to interact with a projected image. '239 patent at Figs. 1A-1C. There is no software or algorithm claimed or described in the '239 patent.

The first step in the *Alice* inquiry asks "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d at 1335-36. Although Qualcomm cites to cases, such as *Enfish,* where claims were not held invalid under § 101, it simply avoids a substantive discussion of the '239 patent claims and the cases identified by Apple. Specifically, Apple's opening brief explained that the '239 patent claims are remarkably similar to other patent claims directed to receiving and responding to user inputs, and displaying data, which were found ineligible by the Federal Circuit and numerous district courts across the country, including this district. (D.I. 114-1 at 12-14.) Qualcomm makes no attempt to address *any* of these closely comparable cases. Indeed, Qualcomm points to certain described gestures for pan and zoom, which are depicted in Figs. 3A-3D of the '239 patent, but fails to address Apple's cited cases dealing with claims for panning and zooming. *See Move, Inc. v. Real Estate All., Ltd.*, No. 2017-1463, 2018 WL 656377, at *4 (Fed. Cir. 2018) (patent directed to displaying a digital map and allowing a user to zoom in for detail ineligible); *Peschke Map Techs. LLC v. Rouse Props. Inc.*, 168 F. Supp. 3d 881, 883 (E.D. Va. 2016) (invalidating a patent directed to a "computer based map navigation and display system" that allowed users to perform gestures, such as zoom and pan).

2

1    The claims of the '239 patent are not focused on any specific improvement in

2    computer capabilities and the patent fails to describe any specific way computer

3    capabilities are improved.  Without identifying any limitation in the claims, or even

4    addressing the points Apple made in its opening brief (D.I. 120 at 22), Qualcomm

5    argues "the '239 patent provides a specific, new interface for receiving and processing

6    user touch inputs—and is therefore distinct from other touch-sensitive displays."  *Id*.

7    Although Qualcomm concedes that touch-sensitive displays were known at the time, it

8    does not identify what the allegedly "specific, new interface" is, much less what

9    makes it have "greater simplicity, accuracy, and ease of use."  (*Id*. at 23.)

10   Importantly, Qualcomm fails to ties these alleged attributes to the asserted claims.

11       Putting aside that the claims are not focused on an improvement to the

12   capability of the technology, Qualcomm's citation to the specification as proof of

13   invention is inapposite.  (D.I. 120 at 13.)  The Court must look to the ***claims*** to

14   determine whether they are focused on an abstract concept, not simply the written

15   description.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

16   While the written description may be helpful in determining whether the recited

17   claims are improvements over the earlier technology, Qualcomm has not shown that

18   this is true here.  Qualcomm's baldly asserts that "the specification explains how the

19   'determined magnitude' of touch gestures is accomplished and represented an advance

20   over the user interfaces that existed at the time of the invention in 2004" (D.I. 120 at

21   13.)  Even if the specification did explain the how (it does not), Qualcomm makes no

22   attempt to explain why this matters for the claims.  In fact, outside of the claims, the

23   word "magnitude" appears just twice in the '239 patent.  *See* '239 Patent 10:8-11,

24   10:15-18.  Further, the patent identifies what it admits are ***known*** methods for

25   determining the magnitude of a touch gesture, which are described in "various

26   publications."  *See, e.g.*, *id*. at 4:58-63 ("[T]he table 122 employs ultrasound used to

27

28

3

1  detect contact information. . . . A variety of capacitive touch pads are available

2  commercially, and described in various publications.").

3      The '239 patent's claims are not focused on improvements to receiving and

4  responding to user inputs or advancements in user interface technology.  The claims

5  are focused on using admittedly known components (i.e., digital data storage, a

6  processor, and a touch-sensitive display), which the '239 patent describes in no detail

7  and uses to perform their intended functions.  Thus, the '239 claims are not directed to

8  an improvement to computer capabilities.

9      **B.     The Claims of the '239 Patent Lack an Inventive Concept**

10     The claims of the '239 patent are not saved by the second step of the *Alice*

11 inquiry because they do not disclose an inventive concept.  The claims recite, at most,

12 known, generic computer components, such as "a touch-sensitive display," "a

13 processor," and "a digital data storage," which perform their ordinary and intended

14 functions.  These components are "off-the-shelf, conventional computer, network, and

15 display technology" that the Federal Circuit has held is "not even arguably inventive."

16 *Elec. Power Grp.*, 830 F.3d at 1355.  "Instructing one to 'apply' an abstract idea and

17 reciting no more than generic computer elements performing generic computer tasks

18 does not make an abstract idea patent-eligible."  *Intellectual Ventures I LLC v. Capital*

19 *One Bank (NA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015).  Moreover, Apple's opening

20 brief explained that the claims of the '239 patent are similar to claims directed to

21 receiving and responding to user inputs that the Federal Circuit and numerous district

22 courts across the country have found to lack an inventive concept.  (D.I. 114-1 at 14-

23 17.)  Tellingly, Qualcomm does not address *any* of these closely comparable cases.

24     Qualcomm argues that the "magnitude measurement is an inventive concept

25 because it is a novel data structure designed the [sic] improve the way a computer

26 manipulates digital imagery."  (D.I. 120 at 22.)  Qualcomm does not say where this

27 "novel data structure" is disclosed or claimed in the '239 patent, much less how it

28

relates to "digital imagery," nor does it substantively address the point Apple made in its opening brief that the term "magnitude" pre-empts all touch as broadly as it is claimed. (D.I. 114-1 at 17-18; *see* claim 2.) No matter how nuanced the magnitude measurement might be when computed, the written description admits that determining the "magnitude" of a user's touch is known ('239 patent at 1:65-2:9, 4:24-5:26) and the claims do not have the specificity Qualcomm says. The patent simply does not support Qualcomm's assertion that the '239 patent is patent-eligible due to an allegedly novel data structure. *See Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00358 WHA, 2018 WL 2287675, at *7 (N.D. Cal. May 18, 2018) (rejecting patentee's argument regarding whether components are well-known in the art raises a fact issue because "the '203 patent itself explains that those components and configurations were considered industry standard at the time of the claimed invention").

Contrary to Qualcomm's assertion that there are "disputed issues of fact regarding 'whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field,' which precludes adjudication" (D.I. 120 at 24), there are no factual disputes here. The patent identifies well-known, interchangeable hardware components performing their conventional functions. *See, e.g.,* '239 patent at 1:55-2:9, 4:37-65, 6:25-35, 11:50-53. Accordingly, Apple requests that the asserted claims be found ineligible under 35 U.S.C. § 101.

## III.    '362 PATENT IS INVALID UNDER 35 U.S.C. § 101

### A.    The Claims of the '362 Patent Are Directed to an Abstract Idea

The claims of the '362 patent are similarly directed to an abstract idea: receiving user's input to switch between applications. Qualcomm's response on whether the '362 patent is directed to an abstract idea conflates step one and step two of the *Alice* analysis by ignoring the claims as a whole and instead focusing on specific limitations. "Under the 'abstract idea' step we must evaluate the focus of the

5

claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter…  [For the inventive concept] step we must look with more specificity at what the claim elements add." *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1325 (2017) (internal quotations omitted).

In the '362 patent, the claims as a whole are directed to receiving user's input to switch between applications.  This determination is no broader than that courts routinely apply in step one of the *Alice* analysis.  *See, e.g.*, *Erie*, 850 F.3d at 1327 ("creating an index and using that index to search for and retrieve data"); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("retaining information in the navigation of online forms"); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("delivering user-selected media content to portable devices"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ("a particular manner of summarizing and presenting information in electronic devices").

It is relevant in this analysis to evaluate the "***claimed*** advance over the prior art." *Erie*, 850 F.3d at 1325 (2017).  Thus, we focus on the claims, rather than the written description. *Alice* 134 S. Ct. at 2355.  As discussed in Apple's motion (D.I. 114 at 19), the '362 patent and the Complaint each state that the advantages of the '362 patent over the prior art is that it applies known application switching techniques to devices with small screens.  '362 patent at 2:3-5, and 2:38-41; Complaint, D.I. 1 at ¶ 27.  Qualcomm's response repeatedly relies on this same "small screen" argument to try and save its patent.  D.I. 120 at 1 ("The specific GUI claimed in the '362 patent is superior to prior art GUIs existing at the time of the invention, including Apple's own iOS GUI, because it provided an inventive and elegant solution to the multitasking problem associated with small screens."); *see also id.* at 15 ("There is no doubt that the GUI described in the '362 patent satisfies this standard because it reflects improvements to prior art multitasking GUIs that were not tailored to small screens.");

*see also id.* at 17, 18, 19.  But, crucially, ***the '362 patent claims are not limited to devices with small screens.***  Even the written description refutes such a limitation: "The invention can be implemented on any electronic device" including a "personal computer," '362 patent at 7:9-12, and is "not inherently limited to any particular computer, virtualized system, or other apparatus."  '362 patent at 24:3-5.  Qualcomm's "small screen" argument improperly imports limitations from the specification into the claims in an attempt to overcome a finding of abstractness.

Qualcomm relies heavily on *Core Wireless*,[1] for the proposition that claims related to a user interface cannot be ineligible under § 101.  But the '362 patent failings stand in contrast to the technology claimed in *Core Wireless*.  While both cases deal with user interfaces for navigation between applications that is where the similarities stop.  No matter how Qualcomm attempts to dress up the '362 patent claims, the claims are instead focused on user motion: move in one direction to scroll, and in another direction to close, just as a person would move papers on a desk to the left or right to change focus, or off the desk to discard, or a user would move and close windows on a computer with a mouse.[2]

---

[1] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).
[2] The '362 patent employs the "papers on a desk" metaphor, '362 patent at 1:46-48 ("A ***desk-top metaphor*** is often employed, wherein the user can move and resize windows on a display screen by direct manipulation."), and *Confident Technologies, Inc. v AXS Group LLC*, Case No. 17-CV-02181-H-MDD, 2018 WL 539166, *6 (S.D. Cal. Jan. 23, 2018), does not undermine it.  Qualcomm omits that the "CAPTCHA" test at issue in that case was a "specific type of image-recognition test in the context of an online server attempting to determine whether a user attempting to access a website is a human or a computer/bot." *Id.*  The court there found that a human with a pencil and paper could not administer the test to both human users and computers/bots. *Id.* In contrast, humans regularly multitask by shuffling papers into and out of focus on a desk.

Case No. 3:17-CV-02403-CAB-MDD

The claimed user interface in *Core Wireless*, on the other hand, is paired with additional functionality:[3] (1) an "application summary window," for each application, which provides the user with a list of functions available within a given application, and (2) the ability to navigate to and interact with these functions within a given application to complete a task ***from the user interface***.  *See, e.g.*, U.S. Patent No. 8,434,020.  The written description and claims describe alternative methods for the device to create the "summary window"—for example, through a "process in which the device learns what functionality and/or stored data types are of interest to any given user" (*id.* at claim 4); through a user defined process (*id.* at claim 5); or by varying the environment of the device or the actions of the user (*id.* at claims 6-7).  The Court focuses on this "application summary window" in determining that the *Core Wireless* patents are not directed to an abstract idea.  *Core Wireless*, 880 F.3d at 1362-63 (considering the Claim 1 requirements of the "particular manner by which the summary window must be accessed," the "restrain[ts] on the type of data that can be displayed in the summary window," and the requirement that "the device applications exist in a particular state" when the summary window is employed).

Qualcomm attempts to characterize the '362 patent as also reciting a "particular manner of summarizing" information, like the earlier filed *Core Wireless* patents.  D.I. 114 at 14.  But the '362 patent contains no limitations and no written description that mentions or describes method or ability to summarize the content of an application in

---

[3]Qualcomm also cites *Trading Techs. Intern., Inc. v. CQG, INC.*, 675 Fed. Appx. 1001 (2017) as support for its argument that claims related to user interfaces cannot be cannot be ineligible under § 101.  However, like *Core Wireless*, the user interface in *Trading Techs.* was "***paired with prescribed functionality [for computerized stock trading] directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art..***" *Id.* at 1004 (emphasis added).  The GUI of the '362 patent has no such "paired functionality" – it merely displays "cards" representing applications and allows user to scroll through the cards.

the manner claimed in *Core Wireless*.  The '362 simply claims the ability to move windows or "cards" around the screen like the admitted prior art, but with a user's touch instead of a mouse, and thus reflects the abstract idea of receiving user's input to switch between applications.

### B.    The Claims of the '362 Patent Lack an Inventive Concept

In looking "with more specificity at what the claim elements add," it is clear that the '362 patent lacks an inventive concept.  *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017).  Qualcomm's response attempts to make much of its "cards," the limitations of the GUI, and the user gestures for moving the cards.  None of these impart an inventive concept to the '362 patent.

The "cards" described in the '362 patent are no different than the "windows" described in the prior art.  The written description explains that "in some ways cards resemble windows as are known in the art of desktop user interfaces," '362 patent at 2:63-65, and that "the term 'card' is used herein merely as a convenient term for referring to an area of the screen that contains information related to or generated by an activity such as a software application," *id.* at 3:1-5.  "The use of generic computer elements like a microprocessor or a user interface do not alone transform an otherwise abstract idea into patent-eligible subject matter."  *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016); *see also Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (noting that "a storage medium and a graphical user interface" are generic components).

Similarly, the claimed limitations of the GUI do not provide an inventive concept to the '362 patent.  For example, Qualcomm stresses the requirement that "a portion of the second card is not visible on the screen."  D.I. 120 at 1; *see also id.* at 12, 14, and 16.  However, the '362 patent describes this arrangement of windows in the prior art: "Conventionally, such an operating paradigm is accomplished by the use of ***multiple overlapping windows*** within a graphical user interface… at any given

9

time, one window has focus (usually indicated as such by being situated on top of the other windows).  Other windows may be visible, invisible, ***or partially visible*** (for example if they are partially or completely obscured by other windows**).**"  '362 patent at 1:44-46 (emphases added).

Finally, Qualcomm argues that the user's ability to move the cards in a particular way or "toggle" between them by user gestures somehow exempts the '362 patent from a finding of abstractness.  D.I. 120 at 12, 14, 15, 16.  But again, the written description forecloses this argument because it describes the window-based prior art as follows: "[a] desk-top metaphor is often employed, wherein ***the user can move and resize windows on a display screen by direct manipulation***… A user can switch from one task to another by causing a different window to have focus; this is commonly accomplished by clicking on a visible portion of the window being activated…"  '362 patent at 1:46-57 (emphasis added).  Instead of clicking and moving a mouse to switch between the screens as was done in the admitted prior art, the user performs this function with a finger.  This does not demonstrative inventive concept and thus the claims are ineligible under 35 U.S.C. § 101.

## IV.    OTHER ARGUMENTS IN QUALCOMM'S OPPOSITION

Qualcomm suggests its yet-to-be entered Amended Complaint creates fact disputes that moot Apple's motion.  Qualcomm's Amended Complaint simply takes the attorney argument and legal conclusions from its brief and asserts them as fact, but this tactic does not undo the admissions in its patents or prior pleadings.  *See Uniloc USA, Inc.*, No. C 18-00358 WHA, 2018 WL 2287675, at *7 (N.D. Cal. May 18, 2018) (rejecting this type of strategy).  Qualcomm also argues that Apple's own patents and various assertions of them establish that Qualcomm's patents are not subject to an *Alice* challenge.  If Qualcomm has concerns about Apple patents there are ways for it to have those concerns addressed without further complicating this litigation with extraneous issues.

Dated:  June 27, 2018                    Respectfully submitted,

By: */s/ Jason. W. Wolff*

Juanita R. Brooks, SBN 75934, brooks@fr.com
Jason W. Wolff, SBN 215819, June 27, 2018
wolff@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Michael A. Amon, SBN 226221, amon@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801
*pro hac vice,* cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421
*pro hac vice,* degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. S.W., Suite 1000
Washington, D.C. 20024
Phone:  202-783-5070 / Fax:  202-783-2331

Betty Chen, SBN 290588, bchen@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone:  650-839-5070 / Fax:  650-839-5071

Benjamin C. Elacqua, TX SBN 24055443
*pro hac vice*, elaqua@fr.com
Bailey K. Benedict, TX SBN 24083139
*pro hac vice*, benedict@fr.com
John P. Brinkmann, TX SBN 24068091
*pro hac vice*, brinkmann@fr.com
FISH & RICHARDSON P.C.
One Houston Center, 28th Floor
1221 McKinney
Houston, TX 77010
Phone: 713-654-5300 / Fax: 713-652-0109

Case No. 3:17-CV-02403-CAB-MDD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thad C. Kodish, GA Bar No. 427603
pro hac vice, tkodish@fr.com
Erin P. Alper, GA Bar No. 940408
pro hac vice, alper@fr.com
Jacqueline Tio GA SBN 940367
pro hac vice, tio@fr.com
Sara Fish, GA SBN 873853
pro hac vice, sfish@fr.com
Lawrence Jarvis, GA SBN 102116
pro hac vice, jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, Suite 2100
Atlanta, GA  30309
Phone:  404-892-5005 / Fax: 404-892-5002

*Attorneys for Defendant Apple Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 27, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on June 27, 2018, at San Diego, California.


*/s/ Jason W. Wolff*
Jason W. Wolff

Case No. 3:17-CV-02403-CAB-MDD